No. 41,585

JAMES TURNER, *Appellee,* v. CHARLES A. COLBERN, *Appellant.*

(348 P. 2d 603)

Opinion filed January 23, 1960.

*George K. Melvin,* of Lawrence, argued the cause, and *John B. Pierson,* of Ottawa, was with him on the briefs for appellant.

*Winton A. Winter,* of Ottawa, argued the cause, and *Basil W. Kelsey,* of Ottawa, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to enjoin the defendant from using the plaintiff's trade name "Kentucky Fried Chicken" and his process of frying chicken for sale at retail. Trial was to the court and judgment was rendered for the plaintiff. The defendant has appealed from that part of the judgment enjoining him from frying chicken under pressure by the plaintiff's process or under any method similar to that process.

On October 1, 1955, Colonel Harland Sanders, of Kentucky Fried

Chicken fame, visited the defendant, Charles Colbern, at his restaurant in Ottawa, Kansas, and demonstrated to him a method of frying chicken for restaurant consumption. While there, Colonel Sanders entered into a franchise contract with the defendant. Colonel Sanders, the sole owner of Kentucky Fried Chicken, Inc., was in the business of franchising his method of frying chicken. At the time of the trial he had outstanding 253 franchises. The Kentucky Colonel had a copyright for the expression "Kentucky Fried Chicken," and had a patent pending for his process of frying chicken under pressure.

On July 13, 1956, Colonel Sanders sold to the plaintiff, James H. Turner, the franchise for Kentucky Fried Chicken for the states of Kansas and Wyoming, including all of the Colonel's rights in those states.

On September 19, 1957, Turner entered into a new franchise contract with the defendant Colbern. At that time Colbern possessed the process of preparing Kentucky Fried Chicken since Colonel Sanders had previously given it to him in 1955. However, Colbern, as licensee, agreed to pay Turner under the new contract, a monthly royalty in an amount equal to four cents for each chicken used to produce Kentucky Fried Chicken; the payments to be mailed monthly.

Colbern agreed to install a Kentucky Fried Chicken neon or plastic sign and to adhere to standard specifications of trade-mark diagram. Colbern acknowledged the validity and ownership of Kentucky Fried Chicken, Inc., of trade-marks, trade names, copy rights, designs, and method of preparation of Kentucky Fried Chicken. The contract was for a term of five years unless sooner terminated, and Turner was given the right to termination upon any default in the performance of the contract by Colbern. Paragraph 13 of the contract reads:

It is Agreed That upon termination of this agreement for any cause whatsoever, the right and privileges of the Licensee to use the name Kentucky Fried Chicken and method of preparation and routine service anywhere shall terminate and Licensee agrees immediately thereupon to discontinue any and all use of said name Kentucky Fried Chicken and not thereafter use said name, Kentucky Fried Chicken in any manner whatsoever or Use the Same or Similar Kind of Routine Service or Method of Preparation of Chicken Whereby the Public Could Be Misled, Etc."

On March 28, 1958, Turner notified Colbern of the cancellation of his Kentucky Fried Chicken franchise for failure to make a report

for four months, for failure to pay the royalties for the same period, and for failure to cook in accordance with the franchise agreement.

After the franchise cancellation, Colbern advertised his fried chicken as being "Kentucky Style," whereupon the plaintiff brought this action to enjoin the defendant from the use of the trade name "Kentucky Fried Chicken" or any variation of the term, and to prohibit the defendant from the use of methods of service and preparation determined and approved by Kentucky Fried Chicken, Inc.

In his amended petition Turner alleged that the process of preparing fried chicken under pressure which was referred to in the contract between the parties was described as follows:

"A quality broiler type chicken is first selected, then the chicken is dissected by a special cutting into nine pieces, each piece being an adequate portion of a serving of the three pieces as usually served on an order, thereby getting an extra order out of the chicken that ordinarily is sold as a half chicken at a certain price. These piece portions are dipped in a milk and egg wash made of two eggs to a quart of milk. Then from the milk wash it is dipped in the special seasoned flour, which is Colonel Sanders secret blend of eleven different spices and herbs, that compliment the flavor of the chicken. Then it is placed into a specially adapted container that contains sufficient grease or fat for frying chicken. Said fat has been preheated to a temperature of 375° to 400° F., depending upon the quantity of chicken to be placed therein. This cooker is of a pressure type when the lid has been placed thereon, said lid having been specially equipped with special release valves. The pressure cooker is placed over the gas flame, the holes in which the combustion chamber or burner have been modified to increase the potential heat unit to a volume of approximately 25,000 BTU instead of the usual 11,000 BTU used in restaurants. This is in order to compensate quickly for the reduced temperature caused by the cold meat. The pressure will build up to 15 pounds above atmospheric pressure. The chicken is kept under this pressure for a minimum of seven minutes or a maximum of eight minutes, thereby decreasing the cooking time from approximately thirty-five minutes to approximately seven or eight minutes. The pressure is let off quickly through the extra release valves causing the pressure of the chicken to expel the grease while the chicken is being removed from the fat, reducing to a minimum the greasiness in the chicken and tenderizing the meat. By causing the chicken to be cooked under this method, any seasoning used on the meat will impregnate the meat more thoroughly in addition to sealing in the natural goodness of the product itself. This method is three to ten times faster than chicken cooked without pressure."

The prayer was that Colbern be permanently enjoined from using upon his menus, advertising, radio announcements or otherwise, the expression "Kentucky Fried Chicken" or any variation thereof; from use of methods of service and preparation determined

and approved by Kentucky Fried Chicken, Inc. theretofore used by the defendant, or, the use of leased equipment and signs in connection with the preparation and sale of Kentucky Fried Chicken in accordance with the methods, standards and routines referred to in the franchise of September 19, 1957.

In his amended answer, the defendant admitted that plaintiff probably had some right in the trade name "Kentucky Fried Chicken," but denied that the use of the phrase "Fried Chicken Kentucky Style" was a violation of said right. He further alleged he had no intention of using the word "Kentucky" in connection with chicken in the future.

Defendants' position, with respect to the method of frying chicken, was that, apart from Colonel Sanders' secret seasoning salt which defendant was not using, Turner had no secret process, and, therefore, the contract failed for lack of consideration. Defendant demonstrated the lack of secrecy in regard to the process by entering into evidence three widely published recipes for frying chicken in a pressure cooker, which set out methods very similar to the process he was using under the franchise.

The evidence of the plaintiff was ample to support the trial court's finding that the method of preparation or total process of Kentucky Fried Chicken was that as alleged in the plaintiff's amended petition and permitted it to enjoin the defendant from frying chicken under pressure by that total process or by any method similar to it, as well as from using the name "Kentucky Fried Chicken" or "Fried Chicken Kentucky Style."

Colbern principally complains that the judgment which enjoins him from preparing fried chicken in a method similar to the process alleged in the plaintiff's amended petition and found by the court to be the total process, is so indefinite and uncertain as to be unenforceable and will result in undue harassment and litigation. As indicative of Colbern's complaint in that respect, he has stated under the heading "Nature of Action" in his brief to this court:

"This is an appeal from a judgment of the district court enjoining appellant from frying chicken in a pressure cooker."

During oral argument, counsel for Turner stated that was his interpretation of the injunction.

We do not believe the record justifies such an interpretation. Colonel Sanders testified he considered that anyone who fried chicken under pressure would be using his process. Whereas

Turner testified that he did not make the claim that anyone who fried chicken under pressure would be violating the process of preparing Kentucky Fried Chicken. The language of the judgment entered by the trial court reads in part:

". . . that the defendant . . . be and he is hereby permanently restrained and enjoined from . . . frying chicken under pressure under the following described total process (described) or under any method similar to said total process of preparation or method of preparation. . . ."

It appears from the judgment that Colbern is not under a blanket injunction from frying chicken under pressure, but is restrained only from doing so under the total process, or a method similar to the total process. And, the total process set forth in the judgment, that which is described in the amended petition, is specific enough for the defendant to refrain from using it, or a similar method, while retaining his right to fry chicken in a pressure cooker.

The judgment of the trial court as herein construed is affirmed.